IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| ROBERTA M. GREENEMAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10-4254-CV-C-ODS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION**

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her disability application. The Commissioner's decision affirmed.

## I. BACKGROUND

Plaintiff is a 42-year-old female with a work history as a telemarketer. At the hearing before the ALJ, she testified she was mainly unable to work due to her emotional problems. The ALJ found Plaintiff was under a disability due to her mental limitations, but the ALJ also found her substance abuse was a contributing factor material to the determination of disability.

Between February 2006 and November 2007, Plaintiff was admitted to the hospital numerous times for overdosing on medications. Plaintiff later described these as "suicide attempts" during a consultative examination. At least one of Plaintiff's doctors during this time noted Plaintiff had also been cited for medical malingering and drug-seeking behavior. A medical assessment completed by Plaintiff's psychiatrist, Allison Felton, MD, concluded Plaintiff was extremely limited in her ability to work. Dr. Felton noted Plaintiff had a long-term history of depression, anxiety, and mood instability, and that she could act out toward others and become angry or impulsive.

The form required Dr. Felton to make her assessment "based solely on [the patient's] mental condition, aside from any drug and/or alcohol abuse problems."

In December 2007, Plaintiff planned to enter a long-term treatment center. She was terminated from the treatment program after she took another participant's Soma. After this incident, however, her drug abuse issues – at least what was reflected in her records – dramatically decreased.

Plaintiff was noted to be not as depressed, with racing thoughts and slight irritability, in April 2008. In May 2008 she was "'defensive'" and "'paranoid'" but also "doing pretty well," although later in the month she reported crying spells. She reported being "more depressed" in June 2008. But when she went for a hepatitis C evaluation in July 2008, she appeared "[a]lert, oriented, . . . [and] . . . healthy appearing." During a later examination she had "good direct eye contact . . . and appropriate speech and behavior. She [was] not frenetic or restless."

Plaintiff saw Andrew Quint, MD, on August 4, 2008. Dr. Quint had been treating Plaintiff for back pain. Dr. Quint noted Plaintiff's psychiatrist had switched her medication and Plaintiff was experiencing worsening irritability with tearful fits. She was switched back to Lithium, which she later reported to be helpful. Dr. Quint also advised Plaintiff that her smoking 1 1/2 packs of cigarettes daily and obesity was contributing to the acceleration of her chronic degenerative disc disease. He advised her to quit smoking and lose weight, but she never quit smoking and no significant weight loss was ever achieved.

In general, after Plaintiff's substance abuse ended she gained some improvement in her mental health symptoms but continued to experience them. During her hearing with the ALJ on July 1, 2009, she testified she felt anxiety on a daily basis, she was sometimes unable to get out of bed, she would cry seemingly for no reason, and she was unable to "pull [herself] together." She stated that, since she stopped drinking, she was "not as bad as" before, she had not overdosed on any medications, and she had not "fantasized very much" about dying; however, she continued to have hopeless thoughts. She testified she has about 5 days out of the month when she cares about nothing, does not bathe, and spends about 10 hours during the daytime in

2

bed.

After the hearing, the ALJ ordered Plaintiff to be examined by psychologist Laura L. Brenner, Ph.d. Dr. Brenner administered the Minnesota Multiphasic Personality Inventory, but Plaintiff's responses resulted in an "invalid profile" which Dr. Brenner interpreted to mean Plaintiff was "over-reporting symptoms." Although Plaintiff's social skills were noted to be good during her brief interview, Dr. Brenner found that Plaintiff was "irritable and prone to conflict" and "would be prone to outbursts with those she interacts with on an ongoing basis." Dr. Brenner also found Plaintiff moderately limited in her abilities to accept instructions and respond appropriately to criticism from supervisors, interact appropriately with the public, get along with co-workers and peers, and maintain socially appropriate behavior. In addition, Dr. Brenner noted Plaintiff "would have marked difficulties setting goals and plans on her own." But Plaintiff's statements to Dr. Brenner regarding Plaintiff's previous drug abuse were interpreted by Dr. Brenner to be inconsistent with the medical records, so in answering whether substance abuse contributed to any of Plaintiff's limitations, Dr. Brenner wrote, "Unknown – she denies any current drug or alcohol abuse and I have no evidence to the contrary. Her report of past drug abuse was inconsistent with her record."

The ALJ concluded Plaintiff's mental limitations, including the effects of substance abuse, would qualify as listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1,§§ 12.04, 12.06, or 12.09. But excluding the substance abuse, the ALJ found Plaintiff's remaining mental limitations would not qualify as "severe" at the step two of the sequential five-step analysis. The ALJ proceeded to complete the sequential analysis because Plaintiff was found to have severe impairments of hepatitis C and chronic musculoskeletal-type complaints. The ALJ considered all Plaintiff's limitations in concluding she was capable of performing the full range of light work, that she was able to return to her prior work as a telemarketer, and that a significant number of jobs existed in the national economy she could perform.

## II. DISCUSSION

"The Social Security Act provides for judicial review of final decisions of the Commissioner, which is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision, and whether the Commissioner correctly applied the relevant legal standards." *Mason v. Barnhart*, 406 F.3d 962, 964 (8th Cir. 2005) (citations omitted). Substantial evidence is defined as "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Martise v. Astrue*, 641 F.3d 909, 920-21 (8th Cir. 2011) (citation omitted). "The court must . . . take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." *Id.* at 921 (citation omitted).

A claimant cannot be found disabled if alcoholism or drug addiction is a contributing factor material to the determination of disability. *See* 42 U.S.C. § 423(d)(2)(C). The ALJ's analysis in Plaintiff's case complied with 20 C.F.R. § 404.1535, which outlines the procedure for handling claims with medical evidence of drug addiction or alcoholism.

First, the ALJ must determine whether the claimant is disabled without discounting any effects of drug addiction or alcoholism. § 404.1535(a). That is what the ALJ did when he found Plaintiff met a Listing. Next, the ALJ must determine what limitations would remain if the drug or alcohol use stopped. § 404.1535(b)(2). The ALJ here found Plaintiff would still have some mental limitations, as well as hepatitis C and chronic musculoskeletal-type complaints. Lastly, the ALJ must determine whether those remaining limitations are disabling. *Id.* With respect to her remaining mental limitations, the ALJ at this step of the analysis found they would not be severe, meaning they were found to be not disabling.

Plaintiff contends the ALJ committed reversible error by finding she did not have a severe mental impairment. "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "Basic work activities" are "the abilities and aptitudes necessary to do most jobs" and include

"[r]esponding appropriately to supervision, co-workers and usual work situations."
§ 416.921(b).

An ALJ assessing the severity of mental impairments must follow the special technique found at § 416.920a. This section requires the ALJ to rate the degree of functional limitation resulting from mental impairments. § 416.920a(b)(2). There are four broad functional areas in which the ALJ rates the degree of a claimant's functional limitation: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. § 416.920a(c)(3).

The ALJ found Plaintiff's remaining mental impairments were not severe by rating the degree of Plaintiff's limitation in the first three functional areas as "mild" and "none" in the fourth area. Some observations by Plaintiff's treatment providers of her following her last overdose support the ALJ's finding. For example, Plaintiff's mood was noted at times to be "euthymic" (normal) and she was noted to have good eye contact and fair insight; she was also frequently noted to be under no distress. Although some of the doctors' mental status examinations also contain contrary observations that detract from the ALJ's finding, this evidence is not so one-sided that the ALJ was compelled to find Plaintiff's mental limitations were severe. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (noting ALJ should be affirmed if court can draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings).

There are two medical source statements in the record regarding Plaintiff's mental impairments – Dr. Brenner's or Dr. Felton's – and neither of them support the ALJ's finding regarding the severity of Plaintiff's mental limitations. The question is whether the ALJ had a reasonable basis for discounting these opinions. *See* 20 C.F.R. § 416.927 (stating rules for evaluating opinion evidence).

The reasons the ALJ gave that were specific to Dr. Brenner's and Dr. Felton's opinions were invalid. Regarding Dr. Brenner's opinion, the ALJ found, "Dr. Brenner's evaluation took into consideration [Plaintiff's] substance abuse and as such is not applicable at this step of the evaluation." But when Dr. Brenner was asked whether the abuse of alcohol or drugs contributed to the limitations she found, she stated, "Unknown – she denies any current drug or alcohol abuse and I have no evidence to the contrary.

5

Her report of past drug abuse was inconsistent with her record." The ALJ essentially found drugs or alcohol contributed to Dr. Brenner's limitations based on Dr. Brenner's statement she *did not know* whether drugs or alcohol contributed to the limitations. That finding was unjustified.[1]

In discussing Dr. Felton's assessment, the ALJ noted it "makes no mention of [Plaintiff's] substance abuse." But the very first page of the assessment form instructed Dr. Felton to make her assessment "based solely on [Plaintiff's] mental condition, aside from any drug and/or alcohol abuse problems." Given these instructions, it is hardly surprising Dr. Felton did not mention substance abuse.[2] The second reason the ALJ gave for discounting Dr. Felton's opinion was because Dr. Felton subsequently terminated Plaintiff from care because she took a non-prescribed drug while in a treatment center. The Court could find nothing in § 416.927 (governing opinion evidence) that would justify disregarding a treating source's opinion for this reason.

The Court nevertheless concludes the ALJ had other, valid reasons for discounting Dr. Brenner's and Dr. Felton's opinions and finding Plaintiff's mental limitations were non-sevre. The ALJ – referring to medical source statements in the record generally – found they were "by and large based on the claimant's representations to the individuals completing the reports" and Plaintiff was "not a reliable source of information." Plaintiff contends the ALJ pointed to nothing in the record that established Dr. Felton's opinion was based by and large on Plaintiff's

---

[1] Plaintiff contends the ALJ erred by not forwarding a letter from her physician treating her pain complaints to Dr. Brenner. The letter stated the physician had not seen evidence of drug abuse. But Dr. Brenner based her statement regarding drug abuse on the inconsistency between Plaintiff's reports and the record. There is little likelihood the letter would have caused Dr. Brenner to change her statement.

[2] The Commissioner suggests Dr. Felton did not mention substance abuse because she was not "fully aware of Plaintiff's prescription drug abuse problem at the time she gave her opinion." But even if she was not "fully aware," she was indisputably aware of Plaintiff's hospital admission for an overdose about 1 month earlier. To conclude Dr. Felton did not mention substance abuse because she was not "fully aware" of it – rather than because she was simply complying with the directions on the form – would not be reasonable.

representations. But one factor in the evaluation of opinion evidence is "[s]upportability": an opinion is given greater weight if it is supported by medical signs, laboratory findings, and good explanations. § 416.927(d)(3). Dr. Felton's opinion was supported by no clinical testing. The only objective evidence noted by Dr. Felton was Plaintiff's long-term diagnoses, which do not themselves show a degree of limitation, and her then-recent hospitalization, which was for a drug overdose.

Dr. Felton's other explanations for the limitations she found are apparently based solely on Plaintiff's reports: Dr. Felton wrote Plaintiff "has difficulty maintaining stability," "has a lot of anxiety when around others," and "still is unpredictable." Likewise, Dr. Brenner's findings that Plaintiff was moderately limited in her abilities to interact and respond to others appear to be entirely based on Plaintiff's representations.

The ALJ was justifiably suspicious of medical source findings derived from Plaintiff's representations. Notably, when Dr. Brenner performed a clinical test on Plaintiff, it resulted in an invalid profile which Dr. Brenner interpreted to mean Plaintiff was "over-reporting symptoms." Plaintiff's reported much worse symptoms to Dr. Brenner during that consultative examination than she had reported to Dr. Brenner during another examination just 3 months before. Dr. Brenner believed Plaintiff was untruthful regarding her overdose history. Plaintiff was (unknown to Dr. Brenner) untruthful about her marijuana use: she told Dr. Brenner she had last used marijuana 6 months before her evaluation, but she reported to her psychiatrist 10 days later that she last used marijuana the month before.

Other evidence shows that Plaintiff had been cited by her doctors for medical malingering and drug-seeking behavior. She told Dr. Brenner she had not driven in 10 years but stated during the hearing she lost her license in 2006 for driving under the influence. Plaintiff's earnings records shows a sporadic work history even before her alleged onset date of June 2, 1998, which suggests she is unmotivated to work. And she has earned less than $1,000.00 total since 1998, yet she has been able to afford smoking at least 1 pack of cigarettes daily, an inconsistency that was never explained. The Court holds these are all sufficient reasons for the ALJ to discredit Plaintiff's credibility. *See Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010) (holding ALJ could

discredit claimant based on doctor's observation indicating claimant feigned symptoms); *Finch*, 547 F.3d at 935-36 (noting ALJ may discount testimony which is inconsistent with record as whole; credibility findings are for ALJ in first instance, and when ALJ explicitly discredits claimant and gives good reasons for doing so, his judgment is entitled to deference); *Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir.1993) (noting sporadic work history in affirming ALJ's credibility analysis).

Even if the ALJ erred in finding Plaintiff's mental limitations were not severe, the Court would conclude the error was harmless because the ALJ continued with the analysis and considered Plaintiff's mental limitations in determining her RFC.[3] Plaintiff does not specifically challenge the ALJ's light-work RFC determination. All the reasons for discounting Plaintiff's credibility the Court has already discussed are applicable at this step of the analysis. Substantial evidence in the record as a whole supports the ALJ's determination that Plaintiff's mental limitations do not restrict her from engaging in the full range of light work.

Plaintiff next argues the ALJ erred by not making explicit findings supporting his decision Plaintiff could return to her prior work as a telemarketer. Plaintiff argues the ALJ failed to compare the duties of a telemarketer to the mental limitations set forth by Dr. Brenner. But since the ALJ was justified in discounting the limitations set forth by Dr. Brenner, the ALJ did not need to do this comparison. And even the ALJ did err, the Court would conclude the error was harmless because the ALJ went on to conclude there were a significant number of jobs in the national economy Plaintiff could perform. This finding was based on Medical-Vocational rules 202.20 through 202.22 of 20 C.F.R. Part 202, Subpart P, Appendix 2, Table No. 2, and Plaintiff makes no argument that it

---

[3] The Court does not interpret *Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007) as establishing a rule of *per se* reversibility regarding an ALJ's error at step two. The Eighth Circuit in a previous case suggested such an error could be harmless if the evidence is "so clearly against the claimant." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001). And at least one district court in this circuit has held error at step two was not by itself reversible error where the ALJ continues with the evaluation in determining the claimant's RFC. *See Lorence v. Astrue*, 691 F. Supp. 2d 1008, 1028 (D. Minn. 2010).

was erroneous.

## III. CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

                                                     /s/ Ortrie D. Smith
                                                   ORTRIE D. SMITH, SENIOR JUDGE
DATE: August 30, 2011                     UNITED STATES DISTRICT COURT